Argued October 29, reversed and remanded December 3, 1973,
petition for rehearing denied January 3, petition
for review denied March 19, 1974

## STATE OF OREGON, *Appellant,* v. DAVID LEWIS CORBETT (No. C 73-02-0539 CR), *Respondent.*

416 P2d 487

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for appellant. On the brief were Lee Johnson, Attorney General, John W. Osburn, Solicitor General, and John W. Burgess, Assistant Attorney General, Salem.

*Gary D. Babcock,* Public Defender, Salem, argued the cause and filed the brief for respondent.

Before SCHWAB, Chief Judge, and FORT and TANZER, Judges.

TANZER, J.

This is an appeal by the state from an order suppressing as evidence marijuana found in a warrantless search of defendant's automobile.

At 10:00 or 10:30 p.m. on February 13, 1973, Sergeant Englert of the Multnomah County Sheriff's Office Narcotics Detail, and three fellow non-uniformed officers went to the property of one James West in order to obtain license numbers and verify West's presence to enable them to draft an affidavit for a search warrant. Sergeant Englert had twice purchased narcotics from West at his residence, had twice before executed search warrants at West's house and found narcotics there, and had been there once at a party, apparently undercover. West gave no permission to the police to be upon his property.

West's property abuts N. W. Cornell Road in Portland. An unpaved driveway through foliage serves both the West residence and a neighbor's residence.

West's house number appears on Cornell Road at the entry to the driveway and there is no gate or other impediment to entry. Sergeant Englert thought that the driveway was public, but West testified that it was privately owned.

Sergeant Englert proceeded up the driveway while his companions parked the police car on Cornell Road. When he reached a point about 150-200 feet up the driveway, just beyond the switchback to the left leading to the neighbor's house and just before a switchback to the right leading to West's house, Englert observed activity through the brush in the "V" of the switchback to the right and stopped abruptly.

Sergeant Englert observed about 20 feet away from him an automobile parked facing West's garage. A male passenger in the car lit a cigarette, inhaled deeply and then passed it to the driver who later proved to be the defendant herein. The cigarette was passed back and forth about three times and its use was characterized by repeated deep inhalations. From his six years' experience in narcotics investigation, Sergeant Englert concluded that the two people in the car were probably smoking marijuana.

Sergeant Englert returned immediately to the police car. Shortly thereafter the defendant and his companion left the premises in their automobile. The police followed as they descended Cornell Road, crossed over to the east side and drove to northeast Portland. At various times along the way, the police were able to observe defendant and his passenger continue smoking, passing the shared cigarette back and forth five or six times.

When the defendant parked, the police parked

behind them. Sergeant Englert opened the passenger door, the passenger exited and Englert smelled "a strong odor of burning marijuana coming from the vehicle." Defendant and his passenger exhibited symptoms of being severely under the influence of marijuana. The officers searched the car and a brown sack on the floor behind the passenger seat was found which contained a plastic bag with one pound of marijuana. The defendant was then arrested.

■ No question is raised as to the existence of probable cause. The only issue presented is the availability of Sergeant Englert's observations in the driveway as a basis upon which to base probable cause to arrest and search. If these observations were unlawfully made, then the subsequent search is tainted and its fruits inadmissible. *Wong Sun v. United States,* 371 US 471, 83 S Ct 407, 9 L Ed 2d 441 (1963); *State v. Hogg,* 7 Or App 99, 490 P2d 198 (1971). The defendant, an invited guest of West, has standing to challenge the validity of Englert's observations. *Jones v. United States,* 362 US 257, 80 S Ct 725, 4 L Ed 2d 697 (1960).

The trial court suppressed the evidence on the ground that it resulted from a trespass. The court found:

"6. That the eventual search and seizure of defendant's car was based solely on knowledge acquired in the course of the trespass, and therefore, the search is illegal and the fruits of the search are inadmissible in this proceeding * * *."

■ Under *Katz v. United States,* 389 US 347, 88 S Ct 507, 19 L Ed 2d 576 (1967), the Fourth Amendment no longer calls for mechanical applications of the law of trespass. The existence or not of prior express approval of the landowner for the officer to enter the

land is not dispositive of plain view and open field search cases. *State v. Stanton,* 7 Or App 286, 490 P2d 1274 (1971); *State v. Brown,* 1 Or App 322, 461 P2d 836 (1969), Sup Ct *review denied* (1970). Real property concepts have yielded their grip on the Fourth Amendment to the *Katz* doctrine which secures reasonably held expectations of privacy. While the Fourth Amendment was once conceptualized purely as a bar to government, it is now more in the nature of a protection of an affirmative personal right to privacy. We approved a twofold test in *Stanton,* quoting from Justice Harlan's concurring opinion in *Katz:*

> " '* * * [T]here is a twofold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as "reasonable". * * *' 389 US at 361." 7 Or App at 293-294.

The conduct of the defendant and his companion does not exhibit an expectation of privacy, but rather an obliviousness to it. They smoked marijuana openly in the driveway and continued to do so as they drove several miles through the city of Portland in open view of anybody who chose to observe. They appeared to rely upon the privacy of the driveway no more than they relied upon the privacy of public streets. The expectation of privacy means something more than a mere hope that there are no policemen among the observers. Defendant exhibited no such expectation.

If we assume for argument, however, that the defendant did subjectively expect privacy, then it is also necessary that society recognize that expectation as reasonable. This court has held such an expectation to be unreasonable as to a greenhouse behind one's residence and as to a patch of marijuana plants grow-

ing in a farm field. *State v. Stanton,* supra, 7 Or App at 295. An expectation of privacy would be less reasonable regarding a long driveway running from a street to a pair of houses. The very nature of the driveway, or a walkway or path in other physical situations, is to provide access for people to the interior of the property. Hence the house number is marked at the entry and there is no gate.

■ People commonly have different expectations, whether considered or not, for the access areas of their premises than they do for more secluded areas. Thus, we do not place things of a private nature on our front porches that we may very well entrust to the seclusion of a backyard, patio or deck. In the course of urban life, we have come to expect various members of the public to enter upon such a driveway, e.g., brush salesmen, newspaper boys, postmen, Girl Scout cookie sellers, distressed motorists, neighbors, friends. Any one of them may be reasonably expected to report observations of criminal activity to the police, *see,* e.g., *State v. Stanton,* supra. If one has a reasonable expectation that various members of society may enter the property in their personal or business pursuits, he should find it equally likely that the police will do so.[1]

■ In this case, there would be no colorable Fourth Amendment question had the police walked up the driveway in order to knock on West's door to ask him some questions. Criminal investigation is as legitimate a societal purpose as is census taking or mail delivery.

---

[1] As we observed in *Stanton,* supra, 7 Or App at 297, the expectation of unauthorized intrusion into a private part of one's property by one class of the public, such as children or parents looking for them, does not create a public license for the general public to intrude and does not convert that private area into an open field.

The "plain view" doctrine would clearly have applied to any observations made on the way to the door. That is a normal occurrence which West would reasonably expect, particularly considering his past dealings with the police. His expectation of public presence is not vitiated by the intention of the police to stop short of his door, i.e., to do something less than West could reasonably have expected. We note, however, that the officer was investigating to detail material for an affidavit for a search warrant, not to directly ferret out contraband. The latter intention may affect whether the officer was acting within the scope of the occupant's reasonable expectation and we therefore do not reach that question in this case.

Therefore, as to this situation, West's driveway did not afford the security of an area in which society would recognize an expectation of privacy to be reasonably held. The observations made by Sergeant Englert were lawfully made and relied upon. The subsequent search was equally valid and the fruits thereof admissible into evidence.

Reversed and remanded.