Argued and submitted February 18, reversed and
remanded for new trial June 29, 1981

STATE OF OREGON,
*Respondent,*

*v.*

SHARON LAVERNE WALLE,
*Appellant.*

(No. 79-3197-C-3, CA 18974)

630 P2d 377

J. Marvin Kuhn, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Jan P. Londahl, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, John P. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

Before Gillette, Presiding Judge, and Roberts and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

This is a criminal case in which defendant seeks reversal of the judgment entered on her conviction for the crime of Manufacture of a Controlled Substance. The sole issue on appeal is whether the trial court erred in failing to suppress evidence seized as a result of a warrantless search and seizure on property where the defendant was living.[1] We conclude that the warrantless search and seizure was unreasonable and therefore reverse.

The evidence introduced at the suppression hearing reveals that on September 25, 1979, Jackson County detectives executed a search warrant on property adjacent to the Escale property. The warrant was for the seizure of marijuana plants. While on the adjacent property, one of the detectives spotted marijuana plants on the Escale property. He called this discovery to the attention of the other detectives. The detectives testifying at the suppression hearing agreed that the plants growing on the Escale property could be clearly seen from the adjoining property; although a wire fence separated the two parcels, it did not block their view in any way. The plants observed by the officers were about 20 feet from the fence and ranged in size from quite small to six to eight feet in height.

After their observations, the officers decided to enter the Escale property. They did that by crossing on to it from the point at which they had made their observations. As they approached the residence to identify the occupants, they heard a vehicle leaving the area. The officers called out, trying to summon someone on the property, but received no response. It is not clear if they actually went to the house. They did proceed to seize the marijuana plants they had seen on the property. Other plants, located behind the residence and observed as the officers approached the house, were also seized. The officers made no attempt to obtain a search warrant.

The officers testified that the Escale property was thickly vegetated and in a secluded rural area. They

---

[1] The property belonged to one Escale. Defendant and Escale had moved on to the property together over two years prior to this incident. Defendant did not share title to it. However, it was her home. To be accurate, we shall refer to the property as the "Escale property."

observed fences on the property but did not see any "no trespassing" signs. A creek or gully separated the two parcels of property near the point where the officers entered it. It is not clear if the officers crossed over a fence. From the description given, they may have had to cross the creek or gully. One officer did recall jumping across or wading through some water.

The evidence at the suppression hearing revealed that the defendant did not actually own the property in question; it was owned by the individual with whom she was living. Defendant had lived there for a little over two years and considered it her home. Both defendant and the owner of the property testified as to its secluded nature. Both expressed their feeling that the property was in a private area. The owner testified that he had put up "no trespassing" signs along the creek crossing and a "hot" fence along a portion of that area to keep people out. Apparently, the creek and this partial fence separated his property from the property the detectives had been searching. However, one could enter the Escale property from the adjacent property without having to cross the fence. The owner stated that a nudist colony was also adjacent to his property and that the residents of the colony occasionally got lost and "drifted" onto his property.

At a second hearing on defendant's motion to suppress, counsel for the state acknowledged that the search warrant which the officers were executing on the adjacent property was defective.

■    The trial judge denied the defendant's motion to suppress the evidence of the seized marijuana plants. He found, as a matter of fact, that the land in question is extremely rural, brushy and generally unfenced, that residents of the nudist colony occasionally wandered onto the land, that the marijuana plants were located near adjoining land and that they could be seen from the officers' vantage point on that adjacent land. On the basis of the above facts and his belief that the defendant was a "social guest" at the time of the seizure,[2] the court concluded that

---

[2] We disagree with the trial court's conclusion that the defendant was merely a social guest; the property and its residence were obviously her home. She therefore has standing to contest the search of the premises.

both the search and warrantless seizure were reasonable. The court found that, although the defendant had a subjective expectation of privacy, that expectation was not reasonable, and the area was therefore not a constitutionally protected area.

In her brief, defendant focuses primarily on the illegality of the officers' presence on the neighboring property. She claims that, because the search warrant they were executing was invalid, the police did not have a right to be there, the "plain view" doctrine does not apply and the officers' observations and subsequent search and seizure were invalid. Defendant also contends that she had a reasonable expectation of privacy in the property in question.

■■ It is helpful to distinguish between two types of "plain view." The doctrine of plain view, as the term is most commonly used, was established in *Coolidge v. New Hampshire,* 403 US 443, 91 S Ct 2022, 29 L Ed 2d 564 (1971), which held that evidence may be seized without a warrant where (1) there is a prior valid intrusion, (2) the discovery is inadvertent, and (3) it is immediately apparent to the police that they have evidence before them. In this case, defendant has no standing to complain about the officer's presence on the adjacent land. *See United States v. Salvucci,* 448 US 83, 100 S Ct 2547, 65 L Ed 2d 619 (1980); *Rawlings v. Kentucky,* 448 US 98, 100 S Ct 2556, 65 L Ed 2d 633 (1980). However, the officers' viewing of marijuana plants established only probable cause to believe that the property contained contraband; it did not legitimize an entry to effect a seizure. *State v. Frink,* 42 Or App 171, 174, 600 P2d 456 (1979). "[P]lain view alone is never enough to justify the warrantless seizure of evidence." *Coolidge v. New Hampshire, supra,* 403 US at 468. An entry to effect the seizure of contraband observed in plain view can only be made under the authority of a warrant or exigent circumstances. *State v. Frink, supra,* 42 Or App at 174. In this case the police did not have a warrant to seize the plants, and there was no evidence of exigent circumstances.

There is a second type of plain view, which involves a situation in which no real "search" has occurred. As stated by La Fave:

"* * *[i]t encompasses those circumstances in which an observation is made by a police officer without a prior physical intrusion into a constitutionally protected area. This includes the case in which an officer discovers an object which has been left in an open field or similar nonprotected area. * * *" 1 La Fave, Search and Seizure, § 2.2, p 242 (1978).

Because this kind of "plain view" involves no intrusion covered by the Fourth Amendment, the three requirements set forth in *Coolidge* need not be met. 1 La Fave, *supra,* at 243; *see also, State v. Corbett,* 15 Or App 470, 473-474, 516 P2d 487 *rev den* (1974).

The test of whether an area is a "constitutionally protected" area of the type referred to by La Fave depends upon whether the defendant had a reasonable expectation of privacy in the area in question. *Katz v. United States,* 389 US 347, 88 S Ct 507, 19 L Ed 2d 576 (1967). In his oft-quoted concurring opinion in *Katz,* Justice Harlan stated that the test to be applied has a two-fold requirement: the person must have an actual or subjective expectation of privacy and that expectation must be one that society is prepared to recognize as reasonable. *Katz v. United States, supra,* 389 US at 361; *see also, State v. Harp,* 48 Or App 185, 189, 616 P2d 564 (1980), *rev den* 290 Or 171 (1980); *State v. Stanton,* 7 Or App 286, 295, 490 P2d 1274 (1971).

In *State v. Stanton, supra,* an "open field" case, we stated that whether there is a reasonable expectation of privacy turns on the facts of each case. In *Stanton,* the police received a report of marijuana growing on a certain parcel of land. An officer, accompanied by a neighbor boy who had first discovered the plants, entered the land to examine them. He picked one of the plants and then, based upon what he had observed, applied for a warrant to seize the rest. We concluded that, while the defendant may have had a subjective expectation of privacy, the expectation was not objectively reasonable. The land was undeveloped pasture land and, as we noted, the plants were in plain view of anyone who happened to be on the property. We stated that, in Oregon, "it is not uncommon for members of the public to engage in various recreational activities on private property." *Id.,* at 296. Thus, one could expect that plants grown in such an open area would be noticed by others.

In a recent case, *State v. Harp, supra,* 48 Or App at 185, we held that a reasonable expectation of privacy did not exist where marijuana plants, growing on the defendant's property, could be seen from a forest service road. In *Harp,* the officer who spotted the plants needed binoculars to identify the plants postively as being marijuana. He used this observation as the basis to secure a warrant to search the property in question.

In this case, the plants could be seen from the adjoining property. As in *Harp,* there was no reasonable expectation that the plants would not be seen by the neighbors and persons on the neighbors' property. However, even though the observation was lawful, it does not follow that the warrantless seizure of the observed plants was likewise lawful. *See* 1 La Fave, *supra,* at 243.

■     Although a person owns property in a rural area where the land is generally undeveloped, it does not automatically follow that he or she cannot have a reasonable expectation of privacy in that property. In this regard, certain of our statements in *State v. Stanton, supra,* 7 Or App at 286, 295-297, were too broad and are overruled. Depending upon the circumstances of the particular case, an expectation of privacy may be objectively reasonable even when activities are carried on in an open field. It is too much to say that one should expect members of the public to engage in recreational activities on someone else's private property just because that property is in the country. Fences are not just to keep animals in; they are also a reasonable way of keeping humans out.[3]

■■     We think that, once the facts concerning a particular piece of property are established, the question of

---

[3] In *State v. Brown,* 1 Or App 322, 461 P2d 836 (1969), *rev den* (1970), the police observed marijuana plants growing in a greenhouse in defendant's back yard. On that basis, they secured a warrant for the search of the property. We upheld the validity of the search on the basis that the plants were in plain view from the open area behind the house. In *Brown* we failed to acknowledge the principles set forth in *Katz v. United States, supra,* 389 US 347. *Brown,* as decided, is no longer good law. Even in *State v. Stanton, supra,* 7 Or App at 293-295, we noted that the "open field" doctrine had to be re-examined in light of *Katz.* The question in each case is whether there is a reasonable expectation of privacy, given the particular facts of each case, and not just whether something is located in an open area.

whether there exists a reasonable expectation of privacy which society is prepared to recognize is one of law, not fact. Here, the evidence establishes that the marijuana was located on a section of a piece of property which was rural and substantially grown over with vegetation. The particular area of the property where the marijuana was located was partly protected by a fence and partly protected by a creek or gully. While the property was visible from adjoining property, there was no evidence in the record to suggest that people commonly (or ever) walked from one piece of property to the other. Nudists were known to come upon the larger piece of property of which the marijuana location was a part, but there is no evidence in the record to suggest that nudists ever wandered into or anywhere near the specific area where the marijuana was found. There is, in fact, no evidence that anyone other than defendant and Escale was ever on or passed through the part of the property upon which the marijuana was growing. There is no basis, therefore, for holding that this is a "plain view" case of the second type referred to by La Fave.

Under these facts, we hold that the defendant had a reasonable expectation of privacy which society recognizes. Because we conclude that the area on which the marijuana was growing was a "constitutionally protected area," it follows that the police officers were required to obtain a search warrant before they could enter upon the property and seize the plants in question. As already noted, they did not do so. Under the circumstances, the motion to suppress evidence should have been granted.

Reversed and remanded for a new trial.