Argued and submitted August 19, reversed and
remanded for new trials November 23, 1981

STATE OF OREGON,
*Respondent,*

*v.*

TIMOTHY JAMES CARTER,
*Appellant.*

(No. 36087, CA 19433)

STATE OF OREGON,
*Respondent,*

*v.*

ARLIN DUANE BURTON,
*Appellant.*

(No. 36086, CA A20310)
(Cases Consolidated.)

636 P2d 460

D. Lawrence Olstad, Portland, argued the cause and filed the brief for appellants.

R. Wayne Torneby, Certified Law Student, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, William F. Gary, Solicitor General, and James E. Mountain, Jr., Deputy Solicitor General, Salem.

Before Buttler, Presiding Judge, and Richardson and Warren, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Defendants, in a consolidated appeal, seek reversal of their convictions for possession of a controlled substance (marijuana) on the ground that the court erred in refusing to suppress all evidence seized by police during a warrantless search of defendants' property.[1] Because we conclude the warrantless search and seizure were unreasonable, we reverse.

The relevant facts are not disputed. State Police Trooper Miller, prior to the events in question, had received information from a confidential informant that marijuana was being grown on defendants' property. He attempted to obtain a search warrant, but was told by the District Attorney that the information was insufficient to establish probable cause. Miller had also driven by defendants' property at various times and, with the aid of binoculars, attempted to spot marijuana plants from the public highway, without success.

On September 22, 1979, Miller and two other troopers, Steele and Chandler, were making a warrantless seizure of marijuana on private property across the highway and approximately one-quarter of a mile from defendants' property. From that vantage point, Miller again tried to look onto defendants' property with binoculars, but he could see nothing. The officers returned to the public highway and again scanned defendants' property. They were unable to see any marijuana. The officers then decided to enter defendants' property and question the residents to determine if marijuana was being cultivated. In doing so, they intended to "keep their eyes open."

In a four-wheel drive vehicle and an open bed pickup truck, the officers drove up the gravel driveway to a metal gate, which was closed, but not locked. A "No Trespassing" sign was posted on the gate, but all three officers testified that they did not see the sign, because they were busy observing the surrounding property. After opening

---

[1] The property, consisting of 17 acres, appears to be owned solely by defendant Burton. Defendant Carter testified that he has lived on the property for approximately nine years. The state does not contend that Carter lacks standing, and we treat both defendants as being residents in the house on the property.

the metal gate, the officers drove past another posted "No Trespassing" sign, which they said they did not see, up to a second, wooden gate. At this point, defendant Carter approached the officers and inquired as to their business. During the ensuing conversation, one of the officers saw something running up a hill about 100 yards away that looked like a large, bushy marijuana plant. Steele and Chandler gave chase up the hill and apprehended defendant Burton, who was carrying a marijuana plant over his shoulder. From that vantage point, the officers observed, in plain view, marijuana plants growing in two greenhouses and in garden patches nearby.

While conversing with defendants, the officers observed smoke coming from the chimney of defendant Burton's residence and detected the smell of burning marijuana. Steele and Chandler entered the house, retrieved what appeared to be marijuana from a woodstove and arrested Burton's wife, who was standing next to the stove. Subsequently, the police were shown five other patches of growing marijuana located in the southeastern and northeastern sections of the property.

The trial court found as a fact that from outside the closed outer, metal gate the officers could not observe the house or any area where marijuana was later found. Having so found, the court, as well as the officers, should have stopped there. The threshold inquiry is whether the defendants had a reasonable expectation of privacy in their property, a question which the trial court did not address, apparently[2] because it found that the officers went on the property to ask if there was marijuana being grown and to ask for permission to search, although they kept, and intended to keep, their eyes open when they went on the

---

[2] The trial court reasoned that, although the officers did not have probable cause to search the premises, the entry onto defendants' property was for lawful investigative purposes. Once lawfully on the property, exigent circumstances developed when Burton was seen running up the hill carrying what appeared to be a marijuana plant and by the smoke and odor of burning marijuana emanating from Burton's chimney which authorized the warrantless seizure of the marijuana in plain view found in both greenhouses, in the patches nearby, and retrieved from the woodstove in Burton's home. The court, however, suppressed the marijuana seized from the five patches in the southeastern and northeastern sections of the property, because it concluded that it was unclear whether there had been a valid consent to search.

property. From those findings the court concluded that the officers were not engaged in a search of the property and, therefore, were lawfully at the second gate from whence they observed in plain view marijuana being carried up the hill by defendant Burton.

In *State v. Walle,* 52 Or App 963, 630 P2d 377 (1981), we discussed the distinction between two variations of the "plain view" doctrine: one, which originated in *Coolidge v. New Hampshire,* 403 US 443, 91 S Ct 2022, 29 L Ed 2d 564 (1971), arises where there is a prior valid intrusion, followed by an inadvertent discovery of immediately apparent contraband, and the other, discussed by Professor La Fave, involves an observation made by a police officer without a prior physical intrusion into a constitional protected area. 1 La Fave, *Search and Seizure,* § 2.2, p 242 (1978).

■ Whether the entry beyond the outer gate here was a valid intrusion depends upon a two-fold inquiry: whether defendants had an actual and subjective expectation of privacy, and whether that expectation is one that society is prepared to recognize as reasonable. *Katz v. United States,* 389 US 347, 361, 88 S Ct 507, 19 L Ed 2d 576 (1967); *State v. Walle, supra* 52 Or App at 968; *State v. Harp,* 48 Or App 185, 189, 616 P2d 564, *rev den* 290 Or 171 (1980).

■ The property here was described as a thick brushy area surrounded by fir trees, partially fenced, with entry along the driveway blocked by two gates. The marijuana growing on the property was not visible from outside the outer gate and could not be seen from any vantage point where the officers had a lawful right to be, even with the aid of binoculars. *See State v. Harp, supra.* Two "No Trespassing" signs were posted: one on the outer gate and another approximately 30 feet inside that gate on a tree. Defendant Carter testified that visitors, such as meter readers and service men, were permitted on the property only with permission. The state argues from that evidence and from evidence that the gates were not always locked, that the "No Trespassing" signs meant nothing and that defendants had no reasonable expectation of privacy. Allowing limited access to the premises, however, does not open the property to the world; an occupier of property does

not have to erect a stone bastion to manifest a subjective expectation of privacy.

■      We conclude that defendants clearly manifested an actual and subjective expectation of privacy and that this expectation was one which society recognizes as reasonable. *State v. Walle, supra.* There was neither a valid prior intrusion nor a plain-view observation without the prior intrusion.

■      The state, however, contends that the police were entitled to enter defendants' property for the purpose of a criminal investigation, relying on our recognition of a societal interest in police investigation in *State v. Corbett,* 15 Or App 470, 475, 516 P2d 487 (1973), *rev den* (1974). We there held, however, that defendant had no reasonable expectation of privacy where the driveway served two houses. Further, *Corbett* relied in part on *State v. Stanton,* 7 Or App 286, 490 P2d 1274 (1971), which was overruled in *State v. Walle, supra.* The upshot of the state's argument here seems to be that if the police are unable to obtain a search warrant for want of probable cause, they may, nevertheless, enter the property to investigate. That is not an acceptable proposition.

Defendants' motions should have been granted. The judgments of conviction in both cases are reversed and the cases remanded for new trials.