Argued and submitted May 14, affirmed October 27, 1982, reconsideration denied January 28, petition for review denied March 1, 1983 (294 Or 569)

STATE OF OREGON,
*Respondent,*

*v.*

ROBERTA NANCY ILLINGWORTH,
*Appellant.*

(No. 81-837-C, CA A22909 (Control))

STATE OF OREGON,
*Respondent,*

*v.*

STEVEN KENT ILLINGWORTH,
*Appellant.*

(No. 81-836-C, CA A22910)
(Cases Consolidated)

652 P2d 834

Ernest E. Estes, Deputy Public Defender, Salem, argued the cause for appellants. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Robert E. Barton, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

### ROSSMAN, J.

In these consolidated criminal cases, both defendants appeal convictions for manufacture of a controlled substance. ORS 475.992. There are four assignments of error.[1] Although our discussion is limited to the single question whether marijuana plants found and seized by sheriff's deputies should have been suppressed as being the fruit of an illegal entry onto defendants' property, we affirm the trial court in all respects.

Defendants Steven and Roberta Illingworth are husband and wife and at the time in question lived on ten acres of land in rural Josephine County. On May 31, 1981, one of defendants' neighbors reported to officers of the Sheriff's Department that Steven had driven by in a yellow pickup and fired some type of firearm at him at about 2:00 p.m. that day. There were no other witnesses to the event. Approximately three hours later,[2] two officers drove to defendants' residence. They parked in the driveway at a point near the house, about 25 feet from the back door. The pickup was not in sight. According to one of the investigating officers, because of the nature of the call they approached defendants' house "cautiously." The officers had been told by Steven on other occasions that they were unwelcome on his property unless he called them or they had a warrant.[3] Deputy Klusmann also testified that: (1) he knew that Steven was a good shot with a handgun; (2) he

---

[1] Defendants contend that the trial court erred: (1) when it failed to suppress marijuana plants, seeds and other evidence recovered from defendants' land and home, because the information presented in the affidavit of Officer Klusmann did not establish probable cause to search; (2) when it failed to suppress marijuana plants and other evidence seized from defendants' land and home, because the evidence was the fruit of an illegal entry onto defendants' property; (3) when it denied defendants' motion for acquittal on the grounds that there had been no evidence introduced to establish that marijuana was a schedule A drug; and (4) by admitting irrelevant evidence.

[2] Defendants note that the officer's visit to their property occurred at 4:50 p.m. that same day and argue that the lapse of time removes any exigency. However, it is unknown when the officers were first told of the shooting and how long they were occupied in searching for an expended bullet or even how long it took to travel to defendants' residence. In any event, there is no evidence that they did not act promptly.

[3] This request was first made more than three weeks previously. It followed a controversy concerning the shooting of a neighbor's pig. Defendant said that he made the request because of the officers' unprofessional conduct.

knew that there were long-standing hard feelings between the neighbors and Steven; and (3) he had previously seen Steven driving a yellow pickup. Klusmann walked to the back door and, at a distance of four or five feet from the house, looked through a large kitchen window to see if anyone was watching him. It was then that he observed a small pot with "six to ten two-inch marijuana plants in it." On discovering no one home, he left. On June 7, he obtained a search warrant for the residence and executed it that same day. During execution of the warrant, the marijuana, the subject of these indictments, was seized from a garden patch on defendants' property.

Defendants argue that Klusmann's initial entry onto their property was unprivileged and violated their right to privacy, thereby tainting the officer's "plain view" observations of the marijuana in the residence. They rely heavily on their previous statements to the officers that they were unwelcome on their property unless they were invited or had a warrant. In addition, defendants contend that, because the officers were acting only on the accusation of a neighbor and their entry was made despite the absence of the pickup, there were no exigent circumstances and the entry, and the fruits therefrom, were illegal.

Klusmann's sole purpose in going onto defendants' property was to investigate the reported shooting incident. There was no evidence that he had any suspicion that defendants were growing marijuana, nor was there any evidence that he was using the neighbor's allegations as a pretext to search the premises. His caution in approaching the house in the event of any possible gunplay and his immediate departure upon learning that no one was home are consistent with his stated purpose.

The circumstances of this case fit squarely within the "plain view" doctrine as outlined by the United States Supreme Court in *Coolidge v. New Hampshire*, 403 US 443, 91 S Ct 2022, 29 L Ed 2d 564 (1971). Here, it is apparent that the officer had a "legitimate reason for being present unconnected with a search directed against the accused," and that the discovery of the proscribed plants was clearly inadvertent. 403 US at 466. We conclude that the marijuana observed through an uncovered window from a place

where the officer had a right to be was within "plain view" and formed a lawful basis for the issuance of the search warrant.

Defendants' earlier directives to the officers stating the conditions under which they might enter their property do not and cannot rise to the level of a legal or constitutional bar precluding officers from performing their lawful investigatory duties. As the trial judge observed, to hold otherwise would be to allow a person to insulate himself from investigation of crimes by simply "putting out a general advice to police officers not to go on the property." At most, such an edict would be nothing more than a hollow gesture.

Affirmed.