Argued and submitted January 16, reversed and remanded June 27, 1984

# STATE OF OREGON,
*Respondent,*

*v.*

# WILLIAM R. RUSSO,
*Appellant.*

# STATE OF OREGON,
*Respondent,*

*v.*

# BARBARA R. FUCHS,
*Appellant.*

(CR 81-8-89; A26013 (Control); CR 81-8-99; CA A26014)
(Cases Consolidated)

683 P2d 163

Susan B. Jordan, Ukiah, California, argued the cause for appellants. With her on the briefs was Raymond F. Thomas, Portland.

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

In these consolidated cases, defendants appeal their convictions for manufacturing marijuana in violation of ORS 475.992(1), contending that the trial court should have suppressed the marijuana seized. We agree. Accordingly, we reverse.

On March 22, 1981, while on patrol in a remote area of Curry County, Deputy Sheriff Gibson of Josephine County received an informal complaint that defendants' dogs were running loose and chasing deer. He had previously received a similar complaint. Gibson attempted to contact defendants by driving to their house, which was located on 120 acres of mountainous and heavily wooded terrain, but was unable to reach the house because their driveway was closed off by a cable and a sign which read in part:

"This is the front door to our home * * *. Please honk your horn; if we're home and available for visitors, we'll come to the door within five minutes. If we don't come, we're not home or not available. Please leave your name and message and we'll contact you. * * *."

Gibson honked his horn, but no one responded; he then left. No further complaints were made concerning defendants' dogs.

Over three months later, Deputy Gibson and Deputy Omlin of Curry County decided to meet in the area of defendants' house "to do some patrol work in that area and try to clear the dog problem up at the same time." When they arrived in the area, they heard dogs barking in the general vicinity of defendants' property. In an attempt to locate the source of the barking, they rode their motorcycles down defendants' driveway, passing several signs marked "private property" and "no trespassing." When they came to the cable and the sign instructing them to honk, they went around the cable and proceeded about one-eighth of a mile to defendants' house. They did not honk. As they crossed a wooded walkway to the front door, they observed 385 marijuana plants growing approximately 40 yards to the south of the house.

Defendants moved to suppress the marijuana, claiming that, by entering their property without a search warrant, the deputies violated both Article I, section 9, of the Oregon

Constitution and the Fourth Amendment to the United States Constitution. The trial court denied the motion, finding that the barking dogs gave the deputies the right to enter the property to investigate. In a trial to the court on stipulated facts, defendants were found guilty of manufacturing marijuana in violation of ORS 475.992(1). They were each sentenced to a maximum period of eight years, with a minimum sentence of two years. These appeals followed.

As a preliminary matter, we note that we originally dismissed this case for lack of jurisdiction because defendants filed their notice of appeal after their convictions but before they were sentenced and judgment was entered. *State v. Russo,* 66 Or App 758, 675 P2d 190 (1984). After that opinion was issued, however, it was brought to our attention that ORS 138.071(1) allows defendants to file their notice of appeal "at any time after verdict * * *." *See State v. McFarland/Chappel,* 10 Or App 90, 497 P2d 1243 (1972), *rev den* (1972). Accordingly, we withdrew our opinion dismissing the appeal. *State v. Russo,* 67 Or App 480 (1984). We now consider the case on the merits.

■■  We first examine whether the deputies' actions violated Article I, section 9, of the Oregon Constitution, which provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers and effects against unreasonable search or seizure * * *."

This section provides protection not only to an individual's house proper, but also to the area surrounding the house, known as the curtilage. *State v. Lee,* 120 Or 643, 253 P 533 (1927). The curtilage includes the area adjoining the house and all outbuildings used in connection with it, such as garages, sheds and barns. *State v. Lee, supra,* 120 Or at 648-49. Whether the place searched is within the curtilage is to be determined from the facts, including its proximity or annexation to the dwelling, its inclusion within the general enclosure surrounding the dwelling and its use and enjoyment as an adjunct to the domestic economy of the family. *Care v. United States,* 231 F2d 22, 25 (10th Cir 1956), *cert denied* 351 US 932 (1956).

■ In the present case, defendants' house is situated in a remote clearing surrounded by dense woods and thick underbrush which serve as a natural exclusionary barrier. The 385 marijuana plants were growing in the same clearing, not more than 120 feet from the house. No fence or other barrier separated the plants from the house and access to both was provided by the same driveway. In our view, because the plants were located within the same enclosure as the house, in an area clearly defined and separated from the surrounding woods, and were in close proximity to the house, they were within the curtilage. *See United States v. Van Dyke,* 643 F2d 992 (4th Cir 1981); *Brinlee v. State,* 403 P2d 253 (Okla 1965).

■ The state argues that the deputies' intrusion into the curtilage was justified because of the prior complaints about defendants' dogs and the presence of barking dogs on defendants' property. According to the state, "the urgent facts at hand required immediate action." We fail to see how a three-month old complaint and some barking dogs constitute probable cause and exigent circumstances entitling the deputies to enter the curtilege without a warrant. The deputies' unconsented trespass violated Article I, section 9, of the Oregon Constitution.[1] The evidence, therefore, must be suppressed.[2]

Reversed and remanded for a new trial.

---

[1] We have considered the cases cited to us by the parties, but do not find them dispositive. For example, the result we reach in this case is consistent with *State v. Carter/Burton,* 54 Or App 852, 636 P2d 460 (1981), relied on by defendants. That case, however, was decided under the Fourth Amendment and *Katz v. United States,* 389 US 347, 88 S Ct 507, 19 L Ed 2d 576 (1967), and so we do not treat it as binding precedent for the purposes of our Oregon constitutional analysis. *State v. Illingworth,* 60 Or App 150, 652 P2d 834 (1982), *rev den* 294 Or 569 (1983), relied on by the state is inapposite. In addition to being a Fourth Amendment case, it involved a true exigency—a fresh complaint of gunshots.

[2] In disposing of this case under traditional curtilage concepts we find to be inherent in Article I, section 9, we do not mean to imply that the result would necessarily be different had the plants in question been in an "open field." The existence and extent of an "open field" doctrine under the Oregon Constitution is an open question.