Argued and submitted February 27, reversed and remanded October 10, reconsideration denied November 9, petition for review denied December 4, 1984 (298 Or 334)

# STATE OF OREGON,
*Respondent,*

*v.*

# KRAIG DOUGLAS OHLING,
*Appellant.*

(8209 2048; CA A28859)

688 P2d 1384

Douglas W. Moore, Albany, argued the cause and filed the brief for appellant.

Robert E. Barton, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

GILLETTE, P. J.

Van Hoomissen, J., dissenting.

## GILLETTE, P. J.

Defendant appeals his conviction for manufacturing a controlled substance, arising from the discovery of over 30 marijuana plants growing in pots along the side of a deck in the back of his house. He argues that the officers who discovered the plants were without authority to be where they were when they did so and that the discovery was therefore illegal. The trial court denied his motion to suppress, and he was convicted after a stipulated facts trial. We reverse and remand.

Defendant lives on the east side of Muddy Creek in rural Linn County. The area is generally agricultural, but the land along the creek is heavily wooded. Acting on a tip, police officers flew over the wooded area near defendant's residence and some other houses. They spotted a small clearing in the woods, on the opposite side of the creek and some distance north of defendant's house, with cultivated marijuana plants growing in it. They then obtained a warrant entitling them to search that area, described in the warrant as "approximately one quarter mile north of the first farmhouse on [Brattain] Road which is located to the east of Muddy Creek, on the west bank of Muddy Creek where the creek makes a bend to the west * * *."

The officers made no attempt to determine the ownership of the land they were authorized to search or of the land around it. Instead, they drove to the area, approaching it from the west on Brattain Road (at that point an east-west route). As they did so, they noticed a dirt road on the west side of the creek heading toward the area where they were authorized to search. Rather than follow that road immediately, they crossed Muddy Creek and went to defendant's house in order to serve the warrant. The officer in charge testified that he "felt that the residence had possession of the land that the marijuana was on" because it was the closest residence to it. He testified to no other basis for his "feeling." There are no indications of any pathway between the residence and the marijuana patch, which are separated by thick woods as well as by the creek. There was no other objective basis for attaching the land where the patch was to defendant's house.

When they arrived at defendant's residence, the officers knocked on the front door but received no response.

Through the window they saw a cigar box that they called a "stash box." A stereo was playing, and the officers went to the back of the house to see if they could find anyone.[1] They found the marijuana plants instead. Leaving behind one of their number, they then went to the west side of the creek, drove up the dirt road and, after some difficulty, located the marijuana patch. Neither defendant nor his roommate had arrived home by that time, so the officers took the plants from the back of the house, left a receipt and a copy of the warrant and departed.[2]

The decisive issue in this case is whether the officers, obtaining no response at the front door, could go to the back yard looking for one of the residents in order to serve the warrant. If they could, the plants were in plain view and readily identifiable.[3] *See State v. Walle,* 52 Or App 963, 967, 630 P2d 377 (1981). By their actions the officers intruded onto the curtilege of defendant's dwelling. Their action was a trespass unless it was privileged or had defendant's express or implied consent. If it was trespassory, the search violated Art I, section 9 of the Oregon Constitution. *See State v. Lee,* 120 Or 643, 649, 253 P 533 (1927); *Smith v. McDuffee,* 72 Or 276, 284, 142 P 558, 143 P 929 (1914); *State v. Russo,* 68 Or App 760, 683 P2d 163 (1984); *State v. Brown,* 1 Or App 322, 325, 461 P2d 836 (1969), *rev den* (1970).[4]

The officers went to defendant's house because they

---

[1] One may suspect that their "feeling" that this house was associated with the marijuana and their observation of the "stash box" played a role in the decision to look in the back. The trial court did not address this issue, and it does not affect our analysis. There is no claim that the officers were engaged in a search at the time they went to defendant's backyard or that they were authorized to do so either by the warrant or by probable cause and practical necessity.

[2] Defendant's conviction was based only on the marijuana found at his home. The record does not disclose what, if any, charges resulted from the marijuana taken under the warrant.

[3] Defendant raises no separate issues concerning the warrantless seizure of the plants.

[4] At trial, defendant argued that the search violated both the Oregon and United States Constitutions. On appeal, he relies only on the Oregon Constitution. Because we are able to resolve the case under well-established trespass doctrines, we do not need to decide whether the analysis of *Katz v. United States,* 389 US 347, 88 S Ct 507, 19 L Ed 2d 576 (1967), expresses a principle of Oregon constitutional law. Neither we nor the Oregon Supreme Court has specifically held that it does, although the Supreme Court did refer to an "expectation of privacy" in *State v. Perry,* 298 Or 21, 688 P2d 827 (1984).

wanted to learn who controlled the area they were authorized to search. Aside from the proximity of defendant's house to that area, they had no reason to believe — and they had made no effort to determine — that there was any connection between defendant and the marijuana. Neither the warrant nor their status as peace officers gave them any greater right to intrude onto defendant's property than any other stranger would have. Going to the front door and knocking was not a trespass. Drivers who run out of gas, Girl Scouts selling cookies, and political candidates all go to front doors of residences on a more or less regular basis. Doing so is so common in this society that, unless there are posted warnings, a fence, a moat filled with crocodiles, or other evidence of a desire to exclude casual visitors, the person living in the house has impliedly consented to the intrusion. *See State v. White,* 18 Or App 352, 354, 525 P2d 188 (1974). Going to the back of the house is a different matter. Such an action is both less common and less acceptable in our society. There is no implied consent for a stranger to do so. "[W]e do not place things of a private nature on our front porches that we may very well entrust to the seclusion of a backyard, patio or deck." *State v. Corbett,* 15 Or App 470, 475, 516 P2d 487 (1973), *rev den* (1974). The facts of this case do not show either an express or an implied consent for strangers to go to the back of defendant's house.

Although the officers may have had good reason to believe that someone was at defendant's house, they had no more legal right to continue to look for that someone after their knocking proved unproductive than anyone else would have. The state seeks to give them a special status because of their duty, under ORS 133.575,[5] to notify the person in

___

[5] ORS 133.575 provides:

"(1) A search warrant may be executed only within the period and at the times authorized by the warrant and only by a police officer. A police officer charged with its execution may be accompanied by such other persons as may be reasonably necessary for the successful execution of the warrant with all practicable safety.

"(2) The executing officer shall, before entering the premises, give appropriate notice of his identity, authority and purpose to the person to be searched, or to the person in apparent control of the premises to be searched, as the case may be.

"(3) Before undertaking any search or seizure pursuant to the warrant, the executing officer shall read and give a copy of the warrant to the person to be

apparent control of the premises to be searched before executing a warrant. That duty gave them no special authority at defendant's house. The statute does not permit officers executing a warrant to take any steps, other than those authorized in the warrant, to determine who is in control of the premises to be searched beyond those they could take without a warrant.[6] In this case the warrant gave no authority to search on the east side of the creek. The officers had no reason to believe that defendant was in apparent control of the area to be searched. They should have left after no one answered their knocks. What they did instead was trespass within the curtilage of defendant's dwelling, a constitutionally protected area. *See State v. Russo, supra.* Because the officers were not in a place where they had a right to be when they saw the marijuana, the plain view doctrine does not apply. The court should have suppressed the evidence.

Reversed and remanded for a new trial.

**VAN HOOMISSEN, J.,** dissenting.

I dissent.

After the officer obtained a search warrant, he went to the area it described. He specifically sought out the closest residence to the marijuana. He thought that the occupant of the residence owned the land where the marijuana was growing. He saw a pickup truck parked in front of the house. He heard a stereo playing. He assumed that somebody was inside. Under the circumstances, that assumption was reasonable. Indeed, if any further evidence of reasonableness was required, co-defendant Daly testified that she had left the stereo on for the specific purpose of creating the impression that someone was inside. I would hold that, on those facts, the officer could go to the back yard looking for an occupant of the residence in order to serve the warrant.

ORS 133.575 is designed to inform an occupant of searched premises that there is legal authority for the search.

---

searched, or to the person in apparent control of the premises to be searched. If the premises are unoccupied or there is no one in apparent control, the officer shall leave a copy of the warrant suitably affixed to the premises."

[6] If the place to be searched is unoccupied or if there is no one in apparent control, the officer may proceed with the search, affixing a copy of the warrant to the premises or other area searched. ORS 133.575(3), n 5, *supra.*

The statute implicitly recognizes the reality that an occupant is less likely to interfere if an officer's identity and authority are made known.

This case is similar to *State v. Illingworth,* 60 Or App 150, 652 P2d 834 (1982), *rev den* 294 Or 569 (1983), where we concluded that the officers had a right to be at the defendant's back door and that marijuana they saw through a kitchen window, and other marijuana found in a garden patch on the property, was properly seized.