Argued and submitted June 18, reversed and remanded for new trial
November 21, 1984

## STATE OF OREGON,
*Respondent,*

*v.*

## RONALD LESTER JACKSON,
*Appellant.*

(J82-2063; CA A30243)

691 P2d 130

David G. Terry, Roseburg, argued the cause and filed the brief for appellant.

Brenda Peterson, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

WARDEN, J.

## WARDEN, J.

Defendant appeals his conviction for possession of a controlled substance. ORS 475.992. He assigns as error the admission of the testimony of a deputy sheriff as to what he observed during a warrantless search of defendant's property, after defendant's motion to suppress the evidence seized in that search had been allowed. Our recent decision in *State v. Ohling*, 70 Or App 249, 688 P2d 1394 (1984), compels us to reverse and remand.

Defendant lives on a 23-acre farm in a remote area of Douglas County in the last and northernmost residence on the road leading to his house. A barbed-wire fence surrounds his property at the outer edge. A long driveway leads from the road to the house. A wooden rail fence topped with barbed-wire surrounds both the house and a large front, back and side yard. The outer fence has no gate, but is posted with a "private property—keep out" sign. A retired couple also lives on defendant's property in a mobile home next to his inner fence on the east side.

In July 1982, an informant told police that he had observed 10 to 15 marijuana plants growing in pots behind a small, red-colored residence in the Basin Creek area near Tyee. The police decided that they lacked probable cause upon which to base a request for a search warrant, because the informant would not allow them to use his name. Nevertheless, two deputies drove to defendant's house intending to confront him with the information and request a consent search.

Two Doberman pinschers approached from the house when the deputies arrived. A pickup was parked beside the driveway near the mobile home. The deputies first determined that no one was in the mobile home and that the dogs were friendly. They then knocked on defendant's front door and called out, but received no answer. An affidavit subsequently prepared by one of the officers in support of a search warrant for the house stated:

> "I went around to see if anyone was in back while calling out 'is anybody here.' While so walking around back I observed 20 marijuana plants growing in the back yard. I seized them, and while doing that I observed through a window that a marijuana plant was in a pot inside the window

frame and that marijuana was being dried inside the house. I have seized much marijuana on many occasions in the past and can readily identify same."

The state contends, however, that the plants were not all actually in the back yard but that one of them was growing in the side yard and that the deputy could see it by walking from the front porch on the south side of the house to the southwest corner. The deputy photographed it from outside the inner fence on the front (south) side of the house. The trial court ruled only that the marijuana was growing "right out loud where anybody who walks up there looking for the activity is going to see it." On that basis, the court held, relying on *State v. Walle,* 52 Or App 963, 630 P2d 377 (1981), and *State v. Illingworth,* 60 Or App 150, 652 P2d 834, *rev den* 294 Or 569 (1982), that the deputy saw the marijuana from a legal vantage point and, therefore, could testify to his observations at trial.[1]

We do not agree that the deputy saw the marijuana from a legal vantage point. The trial court did not rule that the plant in the side yard was visible from the porch, driveway or road, nor does the state contend that the plant was visible from any point less private than the southwest corner of defendant's house. Although in *State v. Ohling, supra,* the officers had to walk around to the back of the house to see the marijuana plants, the rationale of that decision is that, in so doing, they left the area in which consent to the presence of strangers is implied. There was no implied consent in this case to the deputy's leaving the front porch and walking to the corner of the house next to the side yard.

Contrary to the state's argument, neither the dogs nor the pickup gave the deputies reason to think defendant might be behind the house. The deputies also had no warrant, unlike the officers in *State v. Ohling,* and thus had no duty under ORS 133.575 to notify the person in apparent control of the premises before executing the warrant.

The state also argues that the trial court ruled that,

---

[1] The trial court also found there were no exigent circumstances justifying the deputy's immediate seizure of the plants without a warrant. It therefore granted defendant's motion to suppress the plants, but did not suppress the officer's statement that he saw them.

when the deputy went to the southwest corner of the house, he was looking for defendant and not conducting a search. The deputy's subjective purpose in going to the southwest corner of the house has nothing to do with whether he had defendant's implied consent to be there. The deputy had no "legitimate reason for being present unconnected with a search directed against the accused." *Coolidge v. New Hampshire,* 403 US 443, 466, 91 S Ct 2022, 29 L Ed 2d 564 (1971).

In *State v. Carter/Burton,* 54 Or App 852, 636 P2d 460 (1981), we said:

> "The upshot of the state's argument here seems to be that if the police are unable to obtain a search warrant for want of probable cause, they may, nevertheless, enter the property to investigate. That is not an acceptable proposition." 54 Or App at 857.

It is no more acceptable to allow police, when they are unable to obtain a warrant, to enter private portions of the property to "confront the occupant."

Reversed and remanded for a new trial.