Argued and submitted October 28, 1988, reversed and remanded for new trials
August 30, 1989

STATE OF OREGON,
*Respondent,*

*v.*

GARY EUGENE BRESHEARS,
*Appellant.*

(87061255; CA A47511 (Control))

STATE OF OREGON,
*Respondent,*

*v.*

D'ANNE MICHELLE OLIVER,
*Appellant.*

(87061255; CA A47540)
(Cases Consolidated)

779 P2d 158

Steven V. Humber, Salem, argued the cause for appellants. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Frank Gruber, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

NEWMAN, J.

Deits, J., specially concurring.

**NEWMAN, J.**

In these consolidated appeals, defendants challenge their convictions for manufacturing a controlled substance. ORS 475.992. They contend that the court erred in denying their pretrial motions to suppress evidence seized in Breshears' apartment during the execution of a search warrant. We reverse.

Breshears occupied a corner, groundfloor apartment, located in a building containing two apartments that was part of a multi-building complex. Oliver rented an apartment in a separate building in the complex.[1] At 8:10 p.m. on June 14, 1987, Deputy Sheriff Struble went to Breshears' apartment without a warrant to locate a person who allegedly frequented that apartment. Oliver answered Struble's knock and told him that the person sought was not there. Struble explained what next occurred in his affidavit in support of a search warrant:

---

[1] The apartment "complex" included two other buildings. One was a two story building with two apartments on the top floor. The other was also two stories, but it had two apartments on the top floor and two on the ground floor. Struble attached this diagram to his affidavit in support of his request for a search warrant. The "X" in the circle marks the window where the officer saw the plant.

"I returned to the residence on the same date at approximately 10:20 p.m. I knocked on the door twice and there was no answer. I could hear that the television was on and that lights were visible from the inside of the residence. I walked around the northside of the residence and observed a window on the north wall. I have attached a diagram which indicates the location of the apartments at 731 Lyons Street, and have marked the point where I observed the marijuana plants [sic] with an X with a circle around it. * * *

"I made my initial observation of the growing marijuana plant from the communal area of the apartments.

"Through the west window I observed a growing plant approximately 10 inches tall. The plant had five (5) different leaf clusters, and the five (5) individual leaves had serrated edges. I have seen this type of plant before, both large and small, and it has always been marijuana. I believe the plant I observed was in fact marijuana."

A search warrant was issued on the basis of the affidavit and resulted in the seizure from the apartment of, among other things, four growing marijuana plants, a curling iron, woman's jewelry and tampons from the bedroom, a picture of Breshears and Oliver together, a bill from a local merchant addressed to Oliver at apartment #5 and her food stamp card.

Both defendants moved to suppress the evidence seized and to controvert the diagram attached to the affidavit and the statement in the affidavit that the officer had observed the marijuana plant while in a "communal area." The motions were consolidated for hearing.

The evidence at the hearing showed these undisputed facts. Struble left the paved walkway leading to the front door of Breshears' apartment, walked 20-25 feet on the grass and around the northwest corner of the building into the north yard of the complex, stood on the grass and looked southerly into the apartment through the window in the north wall. He testified:

"I walked around to the side of the building to see if there was anyone inside."

From that location, he saw, through the window, a marijuana plant in Breshears' apartment.

The north yard is not a walkway to any other apartment. Bushes and a fence form the yard's northern border;

another building in the complex forms its western border; and the building containing Breshears' apartment is on the southern border. The trial court accepted the officer's diagram as accurate but granted the motions to controvert, in part, stating:

"To the extent this area may be called a common area, I guess you might say, that the Court will allow the affidavit to be controverted to that very limited extent."[2]

However, it denied the motions to suppress:

"But the Court essentially finds that this area was not entitled to the right of privacy which is claimed here to characterize as a trespass. The getting off of walks on the grass is too restrictive a characterization and is not common sense.

"With respect to the individual defendants, the Defendant Oliver does not have any position to suppress any of the evidence seized here. And with regard to the Defendant Breshears, the Court's determination is that the magistrate had probable cause for the issuance of the warrant, and that if there is any excising, it's very minor by the Court, and that the affidavit as it remains is sufficient to establish the probable cause necessary in this case for the issuance of the warrant."

Defendants' sole claim of error is that the court erred by denying their motions to suppress. In particular, they argue that the officer's observation of the marijuana plant was an unlawful search under Article I, section 9, or the Fourth Amendment and that, when the paragraph in the affidavit relating to the observation is excised, the affidavit fails to establish probable cause. We first determine whether the officer invaded an interest protected by Article I, section 9.[3] *See State v. Kennedy,* 295 Or 260, 666 P2d 1316 (1983).

Oliver initially contends that the court erred in denying her motion on the ground that she lacked "standing." It is unclear whether the court's ruling was based on "standing" or

---

[2] The state does not challenge the court's ruling on the motion to controvert.

[3] Article I, section 9, provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

on a conclusion that she lacked a privacy interest under Article I, section 9. The state concedes that Oliver has standing to challenge the introduction of evidence against her, *State v. Tanner,* 304 Or 312, 316, 745 P2d 757 (1987),[4] but argues that she lacks a privacy interest that could have been violated, because she had no property interest in the apartment, the marijuana plant or the area from which the observation was made.

■ The protection that Article I, section 9, affords is not limited to possessory interests in places or things, but also includes privacy interests. *State v. Tanner, supra,* 304 Or at 319. In *Tanner,* the Supreme Court specifically recognized that invitees may have a privacy interest in another's residence. 304 Or at 321. Among the items that Oliver sought to suppress were her personal possessions seized in Breshears' apartment. The state introduced those items as evidence of her connection with the apartment and the marijuana plant.[5] We conclude that Oliver's presence, coupled with the presence of her personal items in the apartment, adequately establishes a privacy interest in the apartment.

■ The remaining issue is whether the officer observed the marijuana plant from an area in which he had a right to be. If he did, then his observation could be used in the affidavit, because the plant was in plain view. *State v. Ohling,* 70 Or App 249, 252, 688 P2d 1384, *rev den* 298 Or 334 (1984). If he did not, the observation could not be considered for purposes of obtaining a warrant. *State v. Donahue,* 93 Or App 341, 345, 762 P2d 1022 (1988), *rev den* 307 Or 303 (1989); *State v. Payne,* 72 Or App 631, 640, 696 P2d 1147 (1985).

Defendants contend that the officer did not have a right to be in the grassy area, because they had a privacy

---

[4] In *Tanner,* 304 Or at 316, the court said:

"A criminal defendant always has standing to challenge the admission of evidence introduced by the state. * * * The question whether a defendant's personal rights were violated by an unlawful search or seizure is often mislabeled a question of 'standing,' but the question goes to the merits of a motion to suppress. The term 'standing' should be used only in the narrow sense of capacity to make a legal challenge."

[5] At the suppression hearing, the state argued that Oliver lacked "standing" or a privacy interest, because she was a trespasser in Breshears' apartment. However, at the consolidated trials, it introduced the personal items seized as evidence connecting her to the apartment and thereby implicated her in its production.

interest in the area. A "privacy interest" is "an interest in freedom from particular forms of scrutiny." *State v. Campbell,* 306 Or 157, 170, 759 P2d 1040 (1988). Occupants of single family residences have a privacy interest in the immediate area around their home over which they exercise control. Consequently, entry into that area violates a privacy interest, unless the occupant has expressly or impliedly consented. *State v. Jackson,* 71 Or App 76, 691 P2d 130 (1984); *State v. Ohling, supra,* 70 Or App at 252.

The state concedes that the officer would not have been entitled to enter the north yard if it had been within the curtilage of a private home but argues that an occupant of an apartment is not afforded the same constitutional protection as a resident of a single family residence. In particular, it argues that

> "[t]he fact that the premises are rented out to tenants and those tenants have access to the grounds of the apartment complex means that any tenant might lawfully have observed Breshears' marijuana plant. The fact that one chooses to reside in such a setting implies a relinquishment of some privacy interest in the surrounding yard area."

However, we have found a privacy interest in the area surrounding an apartment dweller's residence. *State v. Roles,* 75 Or App 63, 705 P2d 227 (1985). The inability to control access to the area and the fact that others could lawfully enter the area are only marginally relevant in determining whether defendants had a privacy interest as against the state. *State v. Tanner, supra,* 304 Or at 321 n 7.

The trial court found that the yard is not a "common area" within the apartment complex. It did not explain what it meant by "common area," other than to state its view that defendants did not have a right in the north yard that would make Struble's entry into it a trespass. The uncontested evidence also showed that defendants neither owned nor controlled the north yard, but shared its use with others connected with the apartment complex, that Struble left the walkway and entered the grassy area of the north yard to see if anyone was in the apartment, that he viewed the marijuana plant after walking 20-25 feet over to the side of Breshears' apartment, that the north yard is largely surrounded by a fence, apartment buildings and brush and that the entrance

into the area ordinarily is by leaving the walkway adjacent to Breshears' apartment and walking on the grass leading into this area. On those facts, we conclude that defendants had a privacy interest in the area that Struble's entry violated. He observed the marijuana plant from a location where he did not have a right to be.[6] Defendants' motions to suppress should have been granted, because the unlawful search served as a basis for the warrant.[7]

Reversed and remanded for new trials.

**DEITS, J.,** specially concurring.

Although I agree with the result in this case, I do not agree with the broad language used in part of the majority's analysis. In particular, I do not agree with the majority's statement that we have previously "found a privacy interest in the area surrounding an apartment dweller's residence." 98 Or App at 111. *State v. Roles,* 75 Or App 63, 705 P2d 227 (1985), cited by the majority, does not stand for that proposition.[1] In fact, we have never before addressed the general question of whether a "common area" surrounding an apartment complex is afforded the same constitutional protection as the "curtilage" surrounding a private home. Moreover, I do not believe that it is necessary to address that issue here, because the area in question was not a "common area."

The majority's description of the location from which the officer made his observations in this case is misleading:

"The uncontested evidence also showed that defendants neither owned nor controlled the north yard, but shared its use with others connected with the apartment, * * * that the north yard is largely surrounded by fence, apartment buildings, and brush and that the entrance into the area ordinarily is by

---

[6] This case is not like *State v. Louis,* 296 Or 57, 672 P2d 708 (1983), where the officer looked into the defendant's window from the neighbor's garage, a vantage point where, having the neighbor's permission, the officer had a right to be. *See also State v. Jackson,* 296 Or 430, 677 P2d 21 (1984).

[7] Because of our ruling, we do not reach defendants' Fourth Amendment argument.

[1] In *Roles,* the defendant, a renter, had actual and exclusive possession of the upper floor of a house. A door leading from the upper floor onto a secluded roof area provided the only direct access to the roof. The roof, where the defendant was growing marijuana, was not "an area surrounding an apartment dweller's residence," but rather was a remote location to which only the defendant had access.

leaving the walkway adjacent to Breshears' apartment and walking on the grass leading into this area." 98 Or App at 111.

In fact, photographs and testimony introduced at the hearing reveal that the area referred to by the majority as the "north yard" is actually nothing more than a narrow strip of grass and weeds, approximately 10 to 15 feet wide, running the length of Breshears' apartment and ending with brush and a fence.[2] The sides of the area are largely overgrown with foliage, thus blocking out sunlight and making entry into or exit from the area difficult at those points. Defendant Oliver testified that neither she nor Breshears had *ever* seen anyone enter the area and that she had never been back there herself, because "[i]t's an unattractive area. It's dark. It doesn't go anywhere. It's just not a place to go." The trial court granted defendants' motion to controvert the officer's statement that the area was a "common area." The state does not challenge that ruling.

On the limited facts of this case, I agree with the majority's conclusion that the officer observed the marijuana plant from a location where he did not have a right to be. Accordingly, I concur in the result.

---

[2] The diagram attached to the affidavit and reproduced in footnote one of the majority opinion is incomplete in that it does not reflect that 10 to 15 feet north of Breshears' building is another building running parallel to it, with large shrubs in between.