Argued and submitted February 1, reversed and remanded April 26, petition for review denied August 22, 1995 (321 Or 512)

## STATE OF OREGON,
*Appellant,*

*v.*

## LARRY JOHN GLINES,
*Respondent.*

(C93-03-31991; CA A82318)

894 P2d 516

Timothy A. Sylwester, Assistant Attorney General, argued the cause for appellant. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Jenny M. Cooke argued the cause and filed the brief for respondent.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

WARREN, P. J.

.

## WARREN, P. J.

Defendant was charged with multiple counts of possession and delivery of a controlled substance. ORS 475.992. The state appeals a pretrial order suppressing evidence. We reverse and remand.

Officer Kelly received three "complaints" that defendant was involved in the manufacture and sale of marijuana. However, he did not believe that he had sufficient information to obtain a search warrant. Kelly decided to go to defendant's home in an effort to obtain further incriminating facts. One of his objectives was to gain entry to defendant's house so that he could detect the odor of marijuana. In March 1993, Kelly and another officer arrived at defendant's house in an unmarked police car and in plain clothes.[1] They went to the side entry and either knocked or rang the door bell. Defendant opened the door slightly. The officers then identified themselves. Kelly said that he suspected defendant had a marijuana grow operation at his house and asked for his consent to search. Defendant asked the officers whether they had a search warrant, and they said, "No." As the conversation continued, Kelly began to detect the odor of marijuana, which he thought was coming from the basement of the house.[2]

Kelly told defendant that he smelled marijuana and said he had other information that indicated defendant had a grow operation. Kelly then asked whether defendant had more than one hundred marijuana plants. Defendant said, "No, I don't have more than a hundred plants." A few minutes later, defendant began asking what would happen if he refused to consent to a search. Kelly said that he would attempt to get a search warrant and station an officer nearby to ensure that defendant would not destroy or remove any evidence. A few minutes later, defendant consented to a search and led the officers to his basement, where they found just under one hundred marijuana plants. Next, after being given *Miranda* warnings, defendant made several incriminating statements.

---

[1] Before that visit, Kelly had stopped at defendant's house at least two other times and used various deceptive tactics in an effort to gain entry.

[2] Interior access to the basement was located near the side entry.

Later, defendant moved to suppress all evidence and statements that resulted from the search. The trial court granted the motion. It concluded that the officers' attempt to gain entry to defendant's house via the side entry violated his right to privacy under Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution, and that defendant's consent to search and his subsequent statements were tainted by that illegality.

The state assigns error to the order granting defendant's motion to suppress. It argues that the officers did not violate any protected privacy interest when they knocked at defendant's side door. We first consider whether the officer's conduct violated Article I, section 9. *State v. Campbell*, 306 Or 157, 162, 759 P2d 1040 (1988).

In *State v. Wacker*, 317 Or 419, 425, 856 P2d 1029 (1993), the Supreme Court discussed privacy interests protected under the Oregon Constitution:

"The privacy interests protected from unreasonable searches under Article I, section 9, are defined by an objective test of whether the government's conduct 'would significantly impair an individual's interest in freedom from scrutiny, *i.e.*, his privacy.' *State v. Dixon/Digby*, 307 Or 195, 211, 766 P2d 1015 (1988) * * *."

Defendant acknowledges that the officers could lawfully knock at his front door. He argues, however, citing several cases, that the officers acted unlawfully when they chose to contact him at the side door, because he had a protected privacy interest in that area. We do not agree.

The cases that defendant relies on to support his argument are not on point. In *State v. Ohling*, 70 Or App 249, 688 P2d 1384, *rev den* 298 Or 334 (1984), we reversed an order that denied defendant's motion to suppress evidence. There, officers, acting on a tip about a marijuana grow operation, went to a rural residence. The officers knocked on the front door and received no response. The officers then went to the back of the house, where they saw marijuana plants in plain view. We observed that, in general, backyards are more private than front porches and concluded that the facts did not show that the defendant had expressly or impliedly given his consent for strangers to go to the back of his

house. Accordingly, the officers were not in a place where they had a right to be when they saw the marijuana. *Id.* at 253-54. Similarly, in *State v. Jackson,* 71 Or App 76, 691 P2d 130 (1984), an officer went to a rural home and, after receiving no response at the front door, walked to the side of the defendant's house. From there, he could see marijuana growing in the back yard. We noted that there was no evidence that the marijuana could be seen from the driveway or road and concluded that the officer did not have the defendant's implied consent to go to the side of the residence. *Id.* at 80. The facts in those cases are readily distinguishable.[3]

There is no evidence in this case that defendant asserted any privacy interest in the side door or the area around it. Defendant lives in an urban area. The side entry is about eight feet from the front wall of defendant's house. It is adjacent to a common driveway that defendant shares with his neighbor, is visible from the public sidewalk and is equipped with a doorbell. The area in which the side entry is located is not fenced and there is no evidence of any "No Trespassing" or "No Solicitors" signs. In other words, there is no objective evidence that defendant manifested an intent to exclude the public from seeking to contact him at the side door. Under those circumstances, we conclude that defendant impliedly permitted casual visitors to contact him at the side door. *See State v. McIntyre/Pereira,* 123 Or App 436, 442, 860 P2d 299 (1993), *rev den* 318 Or 351 (1994).

We conclude that the officers did not invade a privacy interest protected by Article I, section 9, when they knocked at defendant's side door. Accordingly, the search was not unlawful. *Wacker,* 317 Or at 426. Because the officers did not act unlawfully when they contacted defendant at the side door, his subsequent consent to search was not tainted. For the same reasons that we discussed above, we conclude that the officers did not violate defendant's Fourth Amendment right to privacy. Defendant's remaining arguments do not require discussion.

Reversed and remanded.

---

[3] We need not discuss the other cases that defendant cites, because the facts in those cases are also substantively different.