Argued and submitted November 8, 2021, reversed and remanded May 11, 2022

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## RODGER VALENTINO BRYARS,
*Defendant-Appellant.*

Umatilla County Circuit Court
18CR78002; A172869

510 P3d 261

Defendant appeals a judgment convicting him of second-degree criminal trespass, ORS 164.245, and unlawful possession of methamphetamine, ORS 475.894. On appeal, defendant first assigns error to the trial court's denial of his motion to suppress evidence that a police officer obtained after arresting defendant for criminal trespass, raising a variety of arguments. In his second and third assignments of error, defendant contends that the trial court plainly erred by accepting his waiver of his right to a jury trial and conducting a stipulated facts trial, asserting that his waiver was not made intelligently, knowingly, and with a full understanding of his right to a jury trial, because the trial court informed defendant during the waiver colloquy that the jury could find him guilty by a nonunanimous verdict. *Held*: Given the disposition in *State v. Austin*, 316 Or App 56, 59, 501 P3d 1136 (2021) (holding that "it is not obvious or beyond dispute that the federal constitutional right to be convicted only by unanimous jury verdict is the type of 'relevant circumstance' that a defendant must know for his waiver of the right to a jury trial to be knowing and intelligent"), defendant's second and third assignments of error are rejected without extended discussion. The trial court erred in denying his motion to suppress, because the officer seized defendant without subjective reasonable suspicion. That disposition obviates the need to address defendant's remaining arguments in support of his first assignment of error.

Reversed and remanded.

Jon S. Lieuallen, Judge.

Joel C. Duran, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Michael A. Casper, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Christopher A. Perdue.

Before Ortega, Presiding Judge, and Shorr, Judge, and Powers, Judge.

ORTEGA, P. J.

Reversed and remanded.

**ORTEGA, P. J.**

Defendant appeals a judgment convicting him of second-degree criminal trespass, ORS 164.245, and unlawful possession of methamphetamine, ORS 475.894. On appeal, defendant first assigns error to the trial court's denial of his motion to suppress evidence that a police officer obtained after arresting defendant for criminal trespass, raising a variety of arguments. In his second and third assignments of error, defendant contends that the trial court plainly erred by accepting his waiver of his right to a jury trial and conducting a stipulated facts trial, asserting that his waiver was not made intelligently, knowingly, and with a full understanding of his right to a jury trial because the trial court informed defendant during the waiver colloquy that the jury could find him guilty by a nonunanimous verdict.

We reject defendant's second and third assignments of error without extended discussion given our disposition in *State v. Austin*, 316 Or App 56, 59, 501 P3d 1136 (2021) (holding that "it is not obvious or beyond dispute that the federal constitutional right to be convicted only by unanimous jury verdict is the type of 'relevant circumstance' that a defendant must know for his waiver of the right to a jury trial to be knowing and intelligent"). However, we agree with defendant that the trial court erred in denying his motion to suppress because the officer seized defendant without subjective reasonable suspicion; we therefore reverse and remand on that basis. That disposition obviates the need to address defendant's remaining arguments in support of his first assignment of error.

We review the denial of a motion to suppress for legal error and are bound by the trial court's factual findings if there is any constitutionally sufficient evidence to support them. *State v. Escudero*, 311 Or App 170, 171, 489 P3d 569 (2021).

While out on patrol, Sergeant Youncs observed defendant at 4:44 a.m., while it was still dark, seated between two air conditioning units outside a commercial building in Pendleton. The air conditioning units were on a sidewalk that abutted the employee parking lot and employee door entrance to the rear of the building; a sign just north of the

air conditioners in the lot read "Employee Parking Only." Although Youncs did not observe it that night, on the inside of the employee-entrance door about 25 to 30 feet from where defendant was seated was a "NO TRESPASSING" sign warning that "[i]ndividuals who are in or upon these premises after normal business hours without authorization may be arrested for criminal trespass[.]" Youncs testified that he did not normally see people other than employees in that area, particularly so early, so he decided to make contact with defendant. He parked his patrol car, without activating his lights, about 15 feet away from where defendant was seated.

As Youncs rounded the side of the air conditioning unit to approach defendant, he shined his flashlight where defendant was sitting, partially concealed between the two units. Youncs noticed that defendant appeared to be nervous, that a computer was plugged into an outlet near him, and that he was placing items into a backpack. Youncs introduced himself and asked defendant his name, which defendant provided. Youncs then asked defendant what he was doing, and he responded that he was charging his computer and waiting for the next bus to Portland. Youncs found that explanation odd given how far away the bus stop was. Youncs asked if the items defendant was placing into his backpack were drug-related. Defendant replied that they were "just items." After Youncs observed a black sunglasses case next to defendant, he told defendant that he knew it was common for people to place drug-related items in sunglass cases and asked him if there were drugs inside. Defendant replied that there were just items in that as well. Youncs then asked if he could search the case, but defendant declined.

At that point, Youncs decided to contact dispatch and inquire as to whether the police department had a trespass agreement with the business, which enlists the police to keep a property secure from trespassers. Once he confirmed that there was such a trespass agreement, he advised defendant that he was trespassing and asked him to stand up. Defendant did not comply with that request, so Youncs reached down and grabbed defendant's right arm, "and [defendant] put his left hand down between his legs." Youncs believed that defendant was reaching down for something

with his left arm, so Youncs pushed defendant down onto his stomach and placed him in handcuffs. Youncs testified that, at that point, defendant was not free to leave. As he prepared to help defendant stand up, Youncs observed a glass pipe with white residue on the ground where defendant had been seated. Based on his training and experience, Youncs believed that the pipe was likely for methamphetamine use. Before reading defendant his *Miranda* rights, Youncs asked defendant if the pipe belonged to him, and defendant affirmed that it did. Youncs subsequently searched defendant and located methamphetamine.

Before trial, defendant filed a motion to suppress arguing, among other things, that defendant's seizure before his arrest was unlawful because Youncs did not have reasonable suspicion to believe that he had committed criminal trespass or possession of a controlled substance at the time of the seizure, nor did Youncs have probable cause at the time of his arrest. At the suppression hearing, when asked to identify the point at which he "formulate[d] reasonable suspicion that [defendant] was trespassing," Youncs testified that after he verified there was a valid trespass agreement, he then developed reasonable suspicion that defendant was trespassing based on the facts that the property was "not frequented by people during those hours" and because he did not usually see people next to the air conditioning units charging their computers. Youncs did not testify that he had reasonable suspicion that defendant possessed drugs when he asked the drug-related questions, including when he sought defendant's consent to search. The trial court denied the motion to suppress, implicitly finding that Youncs had both reasonable suspicion and probable cause that defendant was trespassing.

On appeal, defendant raises several challenges to the trial court's denial of his motion to suppress. As pertinent here, he contends that the officer seized him when "he stood over defendant with his flashlight on, blocked the one direction that defendant could have walked away, and repeatedly accused [him] of drug possession." Further, defendant contends, because the officer's testimony established that he did not formulate subjective reasonable suspicion

of criminal trespass until *after* the point when he called dispatch to verify the trespass agreement, the seizure was not supported by reasonable suspicion and was unlawful. Alternatively, defendant argues that, even if Youncs had reasonable suspicion to stop him to investigate whether he was trespassing, his accusations of drug possession and his request to search defendant's belongings for drugs exceeded the subject matter and durational limitations for that seizure under Article I, section 9, without any independent constitutional justification. *See State v. Arreola-Botello*, 365 Or 695, 712, 451 P3d 939 (2019) ("[W]e conclude that, for purposes of Article I, section 9, all investigative activities, including investigative inquiries, conducted during a traffic stop are part of an ongoing seizure and are subject to both subject-matter and durational limitations."). Finally, defendant asserts that, even if the questions Youncs asked about drug possession and his request to search constituted mere conversation, his subjective belief that defendant was trespassing was not objectively reasonable and was insufficient to support probable cause for an arrest. Defendant maintains that the error in denying his motion to suppress was not harmless and that all of the evidence that derived from that unlawful seizure, including the evidence of methamphetamine possession and defendant's statements, must be suppressed.

The state responds that the court correctly denied defendant's motion to suppress because the arrest was lawful. In the state's view, Youncs's conduct before the arrest did not amount to a seizure of defendant but, rather, constituted mere conversation that does not implicate the protections of Article I, section 9. The state further argues, that if defendant was seized, the seizure was supported by reasonable suspicion of criminal trespass given the time of the morning, defendant's action in charging his laptop, his location outside of an employee parking lot and entrance, and the "no trespassing" notice 25 to 30 feet from where defendant was sitting. Responding to defendant's argument that the officer's own testimony showed that he did not form subjective reasonable suspicion of criminal trespass until after that point, the state contends that it is "the facts establishing that he subjectively believed he had 'lawful authority'

to seize a suspect" that controls the legal determination of reasonable suspicion, "even if [Youncs] had openly admitted that he lacked reasonable suspicion." Further, the state asserts that Youncs had probable cause to arrest defendant after confirming with dispatch the trespass agreement authorizing Pendleton police to act as business agents in enforcing the trespass law. Lastly, although it does not defend the seizure on the basis that Youncs had reasonable suspicion of drug possession, the state argues that defendant did not preserve the argument that the seizure was unlawful because Youncs improperly extended the scope of the stop by asking the drug-related questions.

We begin by addressing whether defendant was seized. Under Article I, section 9, of the Oregon Constitution, only some police-citizen encounters implicate the Article I, section 9, protections against unreasonable "seizures." *State v. Backstrand*, 354 Or 392, 398-99, 313 P3d 1084 (2013). "At one end of the continuum are mere encounters for which no justification is required," and at the other end are arrests, "which involve protracted custodial restraint and require probable cause." *Id.* at 399. In between are "temporary detentions for investigatory purposes," or "stops," which require "reasonable suspicion." Unlike mere encounters, stops and arrests implicate Article I, section 9, protections. *Id.*

An encounter rises to a seizure when (1) a law enforcement officer intentionally and significantly interferes with an individual's liberty or freedom of movement; or (2) a reasonable person, under the totality of the circumstances, would believe that his or her liberty or freedom of movement has been significantly restricted. *State v. Ashbaugh*, 349 Or 297, 316, 244 P3d 360 (2010). "The question for the court is whether the circumstances as a whole transformed the encounter into a seizure, even if the circumstances, individually would not create a seizure." *State v. Newton*, 286 Or App 274, 280, 398 P3d 390 (2017) (internal quotation marks omitted). Ultimately, "[w]hat distinguishes a seizure (either a stop or an arrest) from a constitutionally insignificant police-citizen encounter is the imposition, either by physical force or through some show of authority, of some restraint on the individual's liberty." *State v. Paskar*, 271 Or App

826, 833, 352 P3d 1279 (2015) (internal quotation marks omitted).

For an encounter to constitute a seizure, "something more than just asking a question, requesting information, or seeking an individual's cooperation is required[.]" *Backstrand*, 354 Or at 403. However, it "is possible to restrict a person's liberty and freedom of movement by purely verbal means[.]" *Ashbaugh*, 349 Or at 317. A verbal encounter rises to the level of a seizure "when the content of the questions, the manner of asking them, or other actions that police take (along with the circumstances in which they take them) would convey to a reasonable person that the police are exercising their authority to coercively detain the citizen[.]" *Backstrand*, 354 Or at 412. Ultimately, "something more" can be the content or manner of questioning or the accompanying physical acts by the officer, if those added factors would reasonably be construed as a show of authority requiring compliance with the officer's request. *Id*. at 403.

We conclude that, under the totality of the circumstances, defendant was seized at least by the time that Youncs asked defendant for consent to search his sunglasses case.

We find *State v. Reyes-Herrera*, 369 Or 54, 500 P3d 1 (2021), to be particularly instructive. In that case, the officer drove his car by an alleyway one afternoon and observed the defendant walking away from another man. *Id*. at 56. The officer believed the two had engaged in a drug transaction, so he drove his patrol car past the defendant in the alleyway and, without activating his lights, parked the car. *Id*. The officer, who was in uniform, got out of the car, "took a couple steps toward [the defendant], waved and said 'hi.'" *Id*. After telling the defendant that he was not in trouble and was free to leave, the officer told the defendant that he had just observed him and the other guy "face to face" and that it had looked like the "'guy was counting money.'" *Id*. The officer then asked the defendant, "'Like did you buy drugs from this guy[?],'" which the defendant denied. *Id*. The officer then asked the defendant for consent to search, the defendant agreed, and he located drugs on him. *Id*. at 57.

On review, the Supreme Court concluded that the officer's statements and questioning of defendant, viewed in the totality of the circumstances, constituted a sufficient show of authority to transform the encounter into a seizure. *Id*. at 67-68. The court first concluded that the officer "conveyed that [he] suspected [the] defendant of criminal activity" by confronting him with information that he had observed the defendant in what he thought was a drug transaction with the other man. *Id*. at 66. Therefore, the court held, the officer's questions to the defendant "indicat[ed] that [the] defendant himself was the subject of a criminal investigation," which is what distinguished the case from others in which it had held that the officers' statements and questions to the defendants were *not* sufficiently coercive to constitute a seizure. *Id*. Further, the court concluded that the officer's questions about the defendant's purported involvement in a drug deal that had just happened while the other man was walking away, "carried an implication that defendant could be in trouble and must remain where he was." *Id*. The court found that "[t]hat implication was compounded" when, after the defendant twice denied being in possession of drugs, the officer asked the defendant for consent to search him. *Id*. at 66-67. The court rejected the state's argument that an officer does not seize a defendant by asking a question about that person's potential criminal involvement, so long as the question does not rise to an "accusation" but only to "gain an understanding of the present circumstances." *Id*. at 59. The court concluded:

> "Acting on no more than a hunch, [the officer] approached [the] defendant and subjected him to questioning that, we conclude, would cause reasonable people to believe that they must remain where they are and respond. Whether or not the questions that [the officer] asked [the] defendant can be characterized as accusing him of committing a crime, the totality of the circumstances was such that reasonable people in defendant's position would have believed that their liberty was restricted."

*Id*. at 67-68.

Here, Youncs observed defendant concealed between two air conditioning units next to an employee parking lot and

entrance on the rear-side of a business in the early morning hours when the business was closed. He parked his patrol car about 15 feet away from defendant in that parking lot without activating his lights. After Youncs approached defendant, he shined his flashlight in the enclosed space where defendant was seated and asked him what he was doing there. Defendant explained that he was waiting for the bus, which Youncs found odd. Youncs then asked defendant if the items defendant was placing in his backpack were drug-related, which he denied. Youncs then pointed out the sunglasses case next to defendant and told him that he knew it was common for people to place drug-related items in sunglass cases and asked if there were drugs inside, which defendant denied. Youncs then asked for his consent to search it.

Like the questions in *Reyes-Herrera*, Youncs's drug-related questions to defendant and request for consent to search the sunglasses case, viewed in the totality of the circumstances, would have communicated to a reasonable person that the person was the subject of a criminal investigation for drug possession and was not free to walk away from the interaction. Although Youncs did not tell defendant that he had just observed him participate in criminal activity moments before like in *Reyes-Herrera*, Youncs confronted defendant about whether he was presently placing drug-related items in his backpack. Further, Youncs's persistent questioning about whether he currently possessed drugs despite defendant's explanations and denials, carried the same implication as the questions in *Reyes-Herrera*, and would have conveyed to a reasonable person that he disbelieved defendant and, believing that defendant was, in fact, in possession of drugs, was currently investigating him for that purported criminal activity. *See State v. Charles*, 263 Or App 578, 588, 331 P3d 1012 (2014) (explaining that "the officer did not accept [the defendant's wife's] explanation and asked [the] defendant, who was seated inside the house, to come outside and talk. At that point, a reasonable person in [the] defendant's shoes would have concluded that he or she was the subject of a criminal investigation."). That implication, like in *Reyes-Herrera*, was compounded when Youncs asked defendant for his consent to search.

Further, Youncs' drug-related questioning, viewed in light of the totality of circumstances, including the time of night, the location of the encounter, Youncs's positioning in relation to defendant, and his use of the flashlight, added to the coercive nature of the encounter. Youncs approached defendant at a time when and place where no one else was around, which is a relevant consideration in determining how a reasonable person would understand the level of coerciveness of the encounter. *See State v. Prouty*, 312 Or App 495, 502, 492 P3d 734 (2021) (noting that, "[a]lthough our analytical focus is primarily on the troopers' conduct, the location and timing of the encounter provide context in determining the coerciveness of the conduct at issue"). Further, Youncs was positioned so that he was standing over defendant and in close enough proximity that he was able to grab defendant's arm later in the encounter, and he stood in front of what would have been defendant's only exit route between the two air conditioners while illuminating his flashlight in the small space between the units.

We acknowledge that none of those circumstances viewed in isolation would necessarily be sufficiently coercive for purposes of Article I, section 9, which is "not [concerned] with limiting contacts between police and citizens." *Backstrand*, 354 Or at 400 (internal quotation marks omitted). Indeed, "law enforcement officers remain free to approach persons on the street or in public places, seek their cooperation or assistance, request or impart information, or question them without being called upon to articulate a certain level of suspicion in justification if a particular encounter proves fruitful." *Id.* Nonetheless, our task is to view the circumstances in their totality and not individually, and those circumstances, although potentially innocuous on different facts, take on particular significance here given the content, nature, and manner of Youncs's drug-related questioning, which conveyed that defendant was the subject of an ongoing criminal investigation and not free to leave. That is especially so given that the encounter occurred in the early morning hours when no one else was around and given Youncs's positioning while conveying to defendant by his questioning that he believed defendant to be engaged in criminal activity. *See Reyes-Herrera*, 369 Or at 58 ("When

an officer takes physical action that could be construed as threatening or coercive or takes a physical position that would suggest to a person that he or she is surrounded, the officer seizes the person." (Internal quotation marks omitted.)); *State v. Washington*, 284 Or App 454, 468, 392 P3d 348 (2017) (observing that, "[i]f an officer uses a flashlight to block a person's view, and thereby hinders his or her ability to leave an encounter, it could contribute to a conclusion that the officer engaged in a show of authority because a reasonable person might feel that he or she is not free to terminate the encounter"); *Newton*, 286 Or App at 283 (noting that "the time of night is one of the circumstances that affects whether a person in [the] defendant's position would reasonably believe that the officer is intentionally restraining the citizen's liberty or freedom of movement *** in a way that exceeds the bounds of ordinary social encounters between private citizens" (internal quotation marks and brackets omitted)). Those facts viewed in their totality were sufficiently coercive for purposes of Article I, section 9, because a reasonable person would not feel free to decline to answer Youncs's questions and get up and walk away from him. Therefore, we conclude that, once Youncs asked defendant for consent to search, defendant was seized with the meaning of Article I, section 9. *See State v. Warner*, 284 Or 147, 165, 585 P2d 681 (1978) (concluding that the officers had seized the defendant where they informed him that they were investigating an armed robbery, told him to put his identification on the table, and told him that they would be on their way once they had "clear[ed] this matter up").

Because we conclude that defendant was seized under Article I, section 9, we must now determine whether Youncs had reasonable suspicion to believe that defendant was committing a crime. An officer has reasonable suspicion when the officer subjectively believes that the person has committed a crime and that belief is objectively reasonable in light of the totality of the circumstances. *State v. Ehly*, 317 Or 66, 80, 854 P2d 421 (1993). The state bears the burden to establish that the officer subjectively believed that the defendant has committed a crime and that the officer's belief is objectively reasonable. *Prouty*, 312 Or App at 507.

Here, Youncs testified, that once he verified that there was a valid trespass agreement, which was after he stopped defendant, he then developed reasonable suspicion that defendant was trespassing. In light of his unambiguous testimony, the evidence is legally insufficient to support an inference that Youncs held a subjective belief that defendant was trespassing until he verified the trespass agreement with dispatch. *See State v. Kentopp*, 251 Or App 527, 532, 284 P3d 564 (2012) (the "reasonable suspicion standard has a subjective component—that is, the officer must subjectively suspect that a person has committed a crime"). We further reject the state's argument that the subjective component of the reasonable suspicion standard is met based on the facts alone and regardless of the officer's testimony that he did not in fact have reasonable suspicion at the time of the seizure. *See State v. Jimenez*, 357 Or 417, 430-31, 353 P3d 1227 (2015) (concluding that the trooper did not have a subjective officer-safety concern when he asked the defendant if he had any weapons because, "[a]lthough the facts known to the trooper at the time that he inquired about weapons might have given rise to reasonable, circumstance-specific safety concerns, the trooper did not so testify"). Nothing in the record establishes that Youncs had subjective reasonable suspicion that defendant had committed criminal trespass at the time of the seizure and the seizure was therefore unlawful.

That conclusion obviates the need for us to address defendant's alternative argument that Youncs's drug-related questioning violated the subject-matter limitations on lawful seizures.

Accordingly, the facts known to Youncs at the time that he stopped defendant were not sufficient to support subjective reasonable suspicion to believe that defendant had committed a trespass, and the trial court erred in denying defendant's motion to suppress. All of the evidence that derived from that unlawful seizure, including the evidence of methamphetamine possession and defendant's statements, must be suppressed.

Reversed and remanded.