No. 18　　　　　　January 22, 2026　　　　　　499

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of C. P. L., aka C. P.-L.,
a Youth.

STATE OF OREGON,
*Respondent,*

*v.*

C. P. L.,
aka C. P.-L.,
*Appellant.*

Multnomah County Circuit Court
22JU05673; A181627

Kathryn L. Villa-Smith, Judge.

Argued and submitted July 2, 2024.

Nora Coon, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Shannon Storey, Chief Defender, Juvenile Appellate Section, Oregon Public Defense Commission.

Jonathan N. Schildt, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, Powers, Judge, and Hellman, Judge.

ORTEGA, P. J.

Affirmed.

**ORTEGA, P. J.**

Youth appeals from a delinquency judgment finding him within the jurisdiction of the juvenile court based on conduct that, if committed by an adult, would constitute the crime of unlawful possession of a firearm, ORS 166.250. In a single assignment of error, youth challenges the trial court's denial of his motion to suppress, arguing that he was unlawfully seized because the officer lacked reasonable suspicion that youth had committed a crime. We conclude that the trial court did not err in denying youth's motion to suppress because the officer's belief that youth had committed acts constituting the crime of trespass at the time he was seized was objectively reasonable. Accordingly, we affirm.

We review the trial court's denial of a motion to suppress for legal error. *State v. Moore*, 264 Or App 86, 87, 331 P3d 1027 (2014). In so doing, we are bound by the trial court's findings of fact if there is constitutionally sufficient evidence in the record to support them. *Id*. If the trial court did not make express findings of fact and there is evidence from which those facts could be decided more than one way, we presume that the court found the facts in a manner consistent with its ultimate conclusion. *Id*. We state the facts in accordance with those standards.

In November 2022, officer Raphael responded to a 9-1-1 call at around 11:00 p.m. The caller reported that an unknown person was peering into the caller's bedroom window. The caller described the type of jacket and shoes the person was wearing and reported that the person was now "across the street and next to a different [residence]." Raphael and another officer parked near the location, which was a small mobile home park, and walked toward the caller's address. As the officers rounded a corner, they immediately saw youth, who they "believed to be the subject of the call" based on the "specific suspect description" provided by the caller. Youth was across the street from the caller's house, and officers did not see anyone else in the area. Youth was "tucked up into a front yard[,] *** kind of behind a bush" that was "just off the sidewalk in the front yard." The bush was "a large kind of hedge that *** completely obscured [youth]" and "it was only after [Raphael] took a

couple of steps down * * * that [he] was able to see [youth] kind of tucked up against [the bush]."

Raphael identified himself as a police officer and ordered youth to face away from the officers and walk backwards toward them. Youth began walking backwards toward them and then stopped suddenly and "darted his hands to his waistband area," which prompted Raphael and the other officer to grab youth's arms, handcuff him, and search him. Raphael found a loaded firearm in youth's waistband.

Youth filed a motion to suppress, arguing that he was unlawfully seized under Article I, section 9, of the Oregon Constitution, when Raphael ordered him to walk toward him because Raphael lacked reasonable suspicion that youth had committed or was about to commit a crime.[1] Youth contended that he "was in a location open to the public" and that Raphael lacked evidence that he had "entered private property [without] implied consent to do so," so no basis existed for reasonable suspicion that he was committing the crime of trespass as the state contended. The state argued that the seizure was lawful because Raphael had reasonable suspicion that youth was trespassing, given that youth was hiding behind a bush that was "right up against the house," which would not be an "area that's open to the public."

At the suppression hearing, youth submitted as an exhibit a picture of the location where officers found youth. The picture showed a street with homes on each side, with a sidewalk on one side of the street and no sidewalk on the other side. The sides of the homes facing the street each had one or two windows but no doors, and there were narrow strips of landscaping separating the homes from the street or sidewalk. The landscaped strips were covered in gravel or soil and planted with anywhere from one to more than six varying sizes of plants, bushes, or small trees. Some of the landscaped strips had a border made of bricks or other material, and others did not. Raphael testified that, although the picture accurately showed what the "lot looks like with the houses," the picture was about seven years old and, thus,

---

[1] Youth also argued that he was unlawfully seized under the federal constitution and that the arrest and patdown were unlawful. We do not discuss those arguments because youth does not renew them on appeal.

"the plants and everything ha[d] changed significantly." Raphael could not tell which bush youth had been hiding behind.

The trial court found that youth was "behind a \*\*\* bush and no one else was near the vicinity" and that youth matched the caller's description of the suspect. The trial court denied youth's motion to suppress after concluding that the officers subjectively believed that youth had committed a crime and that that belief was objectively reasonable based on where youth was found, youth's demeanor when stopped, and youth's clothing and shoes matching the suspect description.

After the trial court denied the motion to suppress, youth entered a conditional admission to the allegation of unlawful possession of a firearm, reserving his right to challenge the denial of his motion. On appeal, youth renews his argument that at the point that Raphael seized him by ordering him to walk toward him, Raphael lacked reasonable suspicion that youth had committed a crime.

Article I, section 9, guarantees individuals the right to be "secure in their persons \*\*\* against unreasonable search, or seizure." The parties agree that youth was seized when Raphael ordered him to walk backwards toward the officers. *See State v. Ashbaugh*, 349 Or 297, 316, 244 P3d 360 (2010) (a seizure occurs when an officer significantly interferes with an individual's liberty or freedom of movement, or a reasonable person would believe that their liberty or freedom of movement has been significantly restricted). Thus, the question before us is whether that seizure was justified by reasonable suspicion of criminal activity. *Id*. at 308-09 (a temporary seizure may be justified by reasonable suspicion that the person has been involved in criminal activity).

An officer has reasonable suspicion when they subjectively believe that the person has committed a crime, and that belief is objectively reasonable under the totality of the circumstances. *State v. Bryars*, 319 Or App 464, 475, 510 P3d 261 (2022). To be objectively reasonable, an officer's suspicion must be based on specific and articulable facts. *Moore*, 264 Or App at 89-90. Reasonable suspicion does not

require that the articulable facts conclusively indicate criminal activity, rather, only that those facts support the reasonable inference that the person has committed a crime. *Id*. at 90. The state carries the burden to establish that the officer subjectively believed that the person has committed a crime, and that the officer's belief is objectively reasonable. *Bryars*, 319 Or App at 475. "Overall, reasonable suspicion is a relatively low barrier." *State v. Roberts*, 308 Or App 225, 230, 480 P3d 1016 (2020), *rev den*, 367 Or 827 (2021) (internal quotation marks omitted).

A person commits the crime of trespass when they "enter[] or remain[] unlawfully *** in or upon premises." ORS 164.245(1) (second-degree criminal trespass). To enter or remain unlawfully includes "[t]o enter or remain in or upon premises when the premises, at the time of such entry or remaining, are not open to the public and when the entrant is not otherwise licensed or privileged to do so." ORS 164.205(3)(a); *see also* ORS 165.205(6) ("'Premises' includes any building and any real property, whether privately or publicly owned."). Premises are "open to the public" only if "their physical nature, function, custom, usage, notice or lack thereof or other circumstances at the time would cause a reasonable person to believe that no permission to enter or remain is required." ORS 164.205(4).

Youth argues that Raphael lacked specific and articulable facts to support reasonable suspicion that he had trespassed, contending that front yards are "not subject to criminal trespass" because "some characteristic of the property objectively would cause a reasonable person to believe that he or she is free to enter or remain on the property without permission." *See Moore*, 264 Or App at 91 (explaining when, for purposes of criminal trespass, "property is open to the public"). In support of that argument, youth notes that "[p]eople routinely step into or walk through front yards, whether to approach the front door, to step aside for another person walking on the sidewalk, to retrieve a lost soccer ball, or to walk safely along the side of the road if there is no sidewalk."

We have held, however, that intrusions onto residential curtilage—the area that includes "the land immediately

surrounding and associated with the home"—are deemed to be trespasses unless the entry is privileged or has the resident's express or implied consent. *State v. Somfleth*, 168 Or App 414, 424, 8 P3d 221 (2000); *State v. Leos-Garcia*, 337 Or App 47, 50-51, 562 P3d 1121 (2024) (defining curtilage (internal quotation marks omitted)). The implied consent exception recognizes that, "given prevailing social norms, the homeowner is presumed to have implicitly consented to entry into the front yard to approach the front door." *Somfleth*, 168 Or App at 424. "Conversely, also given prevailing social norms, such a presumption of implied consent to enter is not ascribed to other areas of the curtilage *** [and] entry onto those areas is presumptively a trespass." *Id.* at 425.

    In light of those principles, we conclude that Raphael's belief that youth was trespassing was objectively reasonable. The specific, articulable facts supporting that belief included that youth was behind a bush at 11:00 p.m. on a landscaped strip that separated the home from the sidewalk and that there were no doors on that side of the house. From those facts, Raphael could reasonably infer that youth was intruding onto the home's curtilage for a purpose other than to contact residents at the front door, and thus that youth's intrusion was unlawful. *Cf. State v. Glines*, 134 Or App 21, 25, 894 P2d 516, *rev den*, 321 Or 512 (1995) (side door to house was subject to implied consent because it was visible from public sidewalk, equipped with a doorbell, not fenced, and near front wall of the house).

    Although we acknowledge that, as youth points out, people step into yards for many innocent reasons, "the possibility that a situation *could* be innocent does not defeat reasonable suspicion of a crime." *State v. Propp*, 345 Or App 376, 383, ___ P3d ___ (2025). Even assuming that the facts here might support an inference that youth was engaging in lawful conduct, the facts nevertheless also supported a reasonable inference that youth was trespassing.[2] *See id.*

_____

    [2] Youth also argues that the basis for the state's argument for reasonable suspicion of trespassing is that "he was attempting to avoid contact with" the officers and depended on their unacknowledged belief "that a narrow strip between a sidewalk and house is not open to a sixteen-year-old person of color who takes two steps off the sidewalk to avoid contact with the police—potentially a matter

(concluding that, under the totality of the circumstances, it was reasonable for officers to infer that the defendant had engaged in or was about to engage in unlawful conduct, regardless of whether that was the only possible inference).

Accordingly, when Raphael ordered youth to walk backwards toward him, Raphael had reasonable suspicion that youth had committed criminal trespass. Thus, the trial court did not err in denying youth's motion to suppress.

Affirmed.

---

of youth's physical safety." While we do not dispute youth's assertion that people of color are "substantially more likely" to have adverse encounters with police, neither the state's argument nor the record below suggest that the basis for the officers' reasonable suspicion was that youth was "attempting to avoid contact" with police. There may well be circumstances where a person's desire to avoid contact with police factors into an officer's basis for reasonable suspicion in a way that calls that basis into question, but we are not persuaded that this record presents such circumstances.